IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NORAIR ENGINEERING CORP.,      *

     Plaintiff/Counter-Defendant,   *

            v.             *       Civil Action No. RDB-16-1440

URS FEDERAL SERVICES, INC.,     *

     Defendant/Counter-Plaintiff.   *

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

Plaintiff/counter-defendant Norair Engineering Corp. ("Norair") has filed this action against defendant/counter-plaintiff URS Federal Services, Inc. ("URS") alleging that URS breached the parties' contract by failing to pay Norair over $2.3 million for construction services performed by Norair at Fort George G. Meade ("Ft. Meade"), located in Anne Arundel County, Maryland.  (ECF No. 2 at ¶ 1.)  Norair originally filed its Complaint in the Circuit Court for Anne Arundel County, Maryland, and URS removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, asserting that Norair's work was performed on a federal enclave.  (ECF No 1 at ¶ 4.)

Currently pending are Norair's Motion to Remand ("Norair's Motion") (ECF No. 15) and URS's Motion to Dismiss for Failure to State a Claim ("URS's Motion") (ECF No. 8). The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, Norair's Motion is DENIED, and URS's Motion is GRANTED IN PART and DENIED IN PART; specifically, it is

GRANTED as to the unjust enrichment claim (Count III) and DENIED as to the breach of contract claims (Counts I and II).

## BACKGROUND

Defendant URS was awarded a federal government contract by the United States Government for the construction of power and cooling system services at Ft. Meade. (ECF No. 2 at ¶¶ 8-9.)   On September 23, 2013, URS subcontracted with Norair for the replacement of an existing Cooling Tower located on Ft. Meade. (*Id.* at ¶¶ 10-11.) Norair alleges that URS unilaterally modified the construction subcontract on multiple occasions, thereby causing delays in the completion of the project, depriving Norair of its expected profits under the subcontract, and resulting in significant monetary damages to Norair. (*Id.* at ¶¶ 12-17.)  Norair alleges that it fully performed its work under the subcontract, and now seeks over $2.38 million in damages from URS. (*Id.* at ¶¶ 18-21.)   URS has filed a counterclaim alleging that Norair failed to complete its work on the Ft. Meade project in the manner required by the subcontract and seeks to recover all costs associated with Norair's alleged breach. (ECF No. 9 at ¶¶ 11-17.)

## STANDARDS OF REVIEW

### I.     **Motion to Remand**

A defendant in a state civil action may remove the case to federal court only if the federal court can exercise original jurisdiction over at least one of the asserted claims.  28 U.S.C. § 1441(a)-(c).  Once an action is removed to federal court, the plaintiff may file a motion to remand the case to state court if there is a contention that jurisdiction is defective.

28 U.S.C. § 1447(c).  The party seeking removal, and not the party seeking remand, bears the burden of establishing jurisdiction in the federal court.  *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)).   Federal courts are obliged to carefully scrutinize challenges to jurisdictional authority, and must "do more than simply point jurisdictional traffic in the direction of state courts."  *17th Street Associates, LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 592 (E.D. Va. 2005).  On a motion to remand, this Court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court."  *Richardson v. Phillip Morris, Inc.*, 950 F. Supp. 700, 701-02 (D. Md. 1997) (citation omitted).   "If federal jurisdiction is doubtful, a remand is necessary."  *Mulcahy*, 29 F.3d at 151; *see also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004).

## II.     Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) have articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* (stating that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

ANALYSIS

### I.      Motion to Remand

Norair argues in support of its Motion to Remand that URS "must do more than merely allege that Fort Meade is a federal enclave to establish jurisdiction *prima facie*. It must prove that the area on which the work giving rise to this cause of action was performed on part of the federal enclave under exclusive federal jurisdiction." (ECF No. 15-1 at 3.) Citing *Baltimore Gas & Elec. Co. v. United States*, 133 F. Supp. 2d 721, 742 (D. Md. 2001), Norair notes that parts of Fort Meade have been ceded back to the State of Maryland, and are thus outside of this Court's original jurisdiction. (*Id.*) Norair thus argues that because URS did not specifically 'prove' in its Notice of Removal that the work in question occurred on an exclusively federal portion of Fort Meade, removal was defective.

In its opposition, URS raises two specific arguments: (1) the notice of removal is subject only to the Federal Rules' notice pleading standard; and (2) the Complaint and

Subcontract "clearly evidence that Norair's work was performed in a highly secured federal facility." (ECF No. 18 at 2.)  In addition, URS provides an affidavit stating that the work was performed on federal property. (*Id.*)  Finally, URS asks the Court to take judicial notice of the status of the property. (*Id.*)

URS convincingly rebuts Norair's suggestion that the work at issue in this case occurred outside of the federal enclave.  First, URS's notice of removal was not facially defective.  The federal removal statute, 28 U.S.C. § 1446(a), provides that the notice of removal need only contain "a short and plain statement of the grounds for removal."  The United States Court of Appeals for the Fourth Circuit has explained that this language "is deliberately parallel to the requirements for notice pleading in Rule 8(a) of the Federal Rules of Civil Procedure." *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 199 (4th Cir.2008) (citing *Twombly,* 550 U.S. at 554–56).  Thus, a notice of removal is not subject to "a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint." *Id.* at 200. *See also Jones v. John Crane-Houdaille, Inc.*, No. CIV. CCB-11-2374, 2012 WL 1197391, at *2 (D. Md. Apr. 6, 2012).  While Norair correctly notes that the party seeking removal bears the burden of establishing jurisdiction in the federal court, this rule does not require the removing party to conclusively establish federal jurisdiction in the Notice of Removal; rather, the issue may be properly raised, as here, in a Motion to Remand. *See Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 726 (D. Md. 2006) (assessing removing party's proof of federal jurisdiction in the context of motion to remand).

In this case, URS's Notice of Removal states, in pertinent part, that: "Norair's breach of contract and other causes of action arise out of work performed by Norair at the

Government enclave known as Fort Meade located in Maryland.  Norair's performance of the work on a federal enclave creates federal question jurisdiction pursuant to 28 USC Section 1331…"  (ECF No. 1 at ¶ 4.)  Accordingly, URS's Notice of Removal satisfies the Federal Rules' notice pleading standard and is not facially defective.

Second, the Complaint and Subcontract (filed as Exhibit A to the Complaint) (ECF No. 2-1) plainly indicate that the location of the work performed was on a federal enclave. The address to which supplies for the project are to be shipped is listed in the Subcontract is the "Maryland Procurement Office, 9800 Savage Road, Fort G. Meade, MD 20755." (Subcontract at § F.6, ECF No. 2-1 at 12.)  This address, as URS notes, is the publicly-published address of the National Security Agency ("NSA").  (ECF No. 18 at 6) (citing cases).  While the location to which supplies are to be shipped is not *necessarily* the site of the work performed, this fact is nonetheless highly probative of the location of the work. Important to the present discussion, this Court has recognized that the NSA operates on an exclusive federal enclave on Fort Meade.  *See Baltimore Gas & Elec. Co. v. United States*, 133 F. Supp. 2d 721, 744 (D. Md. 2001).  Other aspects of the Subcontract also support the conclusion that the work was to be performed on exclusively federal property: the extensive security provisions set forth in Section H of the Subcontract and the application of extensive federal regulations noted in Part II(I) of the Subcontract are particularly probative in this respect.  (ECF No. 2-1 at 17-26.)

Third, URS has submitted the sworn affidavit of Bob Iman, Director of Subcontracts for URS, in which Mr. Iman states that the work was performed "on the premises of 9800 Savage Road…within the fenced security perimeter of a secured area…patrolled by a

[Department of Defense] Agency police force." (ECF No. 18-1 at ¶ 4.) In his affidavit, Mr. Iman has produced an email from a Fort Meade official indicating that the building where the work was performed is located on federal property. (ECF Nos. 18-2, 18-3.) While Norair questions the reliability of this evidence in its reply brief, Norair has produced no evidence whatsoever to the contrary. (ECF No. 19.)

Finally, pursuant to Rule 201 of the Federal Rules of Evidence, this Court takes judicial notice of the fact that the 9800 Savage Road address is the publicly-published address of the National Security Agency. This information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). *See* National Security Agency, Points of Contact, available at: https://www.nsa.gov/business/contacts/ (last accessed December 12, 2016) (listing the "9800 Savage Road" address).

Thus, the evidence presented, coupled with Norair's presence on the work site for nearly two years, clearly indicates that Norair's Motion is without merit. Accordingly, the Motion to Remand (ECF No. 15) is DENIED.

## II.    Motion to Dismiss

URS's Motion to Dismiss is based on two principal arguments. First, URS asserts that the "No Damages for Delay" clause in Section 8.0 of the Subcontract's General Conditions precludes Norair's recovery of any damages arising out of delay. (ECF No. 8-1 at 5-6.) URS notes that Maryland courts have strictly enforced "No Damages for Delay" clauses and relies in particular on the opinion of the Maryland Court of Special Appeals in *State Highway Admin. v. Greiner Eng'g Scis., Inc.*, 83 Md. App. 621, 577 A.2d 363 (1990).

Second, URS asserts that Norair's unjust enrichment / quantum meruit (Count III) cause of action is barred by the existence of an express contract between the parties. (*Id.* at 8-9.)[1]

In its Response to URS's Motion, Norair raises several arguments to avoid the effect of the "No Damages for Delay" clause. (ECF No. 14.) First, Norair argues that the scope of the "No Damages for Delay" clause is more limited than URS's claims: specifically, Norair asserts that "Section 8.0 only bars damages for delays caused by 'other work' occurring concurrently on the project site." (ECF No. 14-1 at 5.) Second, Norair argues that URS's interpretation of Section 8.0 conflicts with the "Changes" clause (Section 9.0) of the Subcontract and, therefore, the ambiguity should be construed against URS as drafter. (*Id.* at 6.) Third, Norair suggests that the "Order of Precedence" clause (Section H.21) of the Subcontract incorporates Federal Acquisition Regulations ("FAR") which permit delay damages and which "must take precedence over Section 8.0." (*Id.* at 6-7.)

In addition, Norair seeks to avoid the general rule that "no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests," *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 96–97, 747 A.2d 600, 607 (2000), by invoking certain purported exceptions to the rule.

---

[1] URS's Motion does not address Norair's allegations of damages incurred for "modifications, work performed, [and] retainage." (ECF No. 2 at ¶ 164.) Indeed, the Complaint on several occasions notes damages incurred for reasons *other than delays. See, e.g.,* ECF No. 2 at ¶¶ 25-27, 39-41. Nor does URS directly address the merits of Count II (Breach of Contract (Covenant of Good Faith and Fair Dealing)) of Norair's Complaint in its Motion or Reply. *See* ECF Nos. 8, 17. Thus, the Court interprets URS's Motion as one for Partial Dismissal of Plaintiff's Complaint.

The parties' arguments, including those set forth in URS's Reply (ECF No. 17), are addressed in turn below.

## A. The "No Damages for Delay" Clause

The "No Damages for Delay" clause, found in Section 8.0 of the parties' Subcontract, provides:

> "Subcontractor shall be required in the performance of its Work to coordinate its activities at the Facility Site with those of Contractor's or Owner's other contractors. Subcontractor agrees that the Owner or Contractor shall have the right to perform or have performed in or about the Facility Site during the time when Subcontractor is performing its Work such other work as Owner or Contractor may desire and that Subcontractor shall make every reasonable effort to enable both its work and such other work to be completed without hindrance or interference. **In the event Subcontractor's performance of its Work is delayed or interfered with by the work of Contractor, Owner or their respective other contractors, or the manner in which Contractor coordinates, prioritizes or otherwise requires or permits the Work and such other work to be performed, Subcontractor's sole and exclusive remedy shall be an extension of time for the performance of the Work.** Any claim by Subcontractor for an extension of time arising out of any alleged delay or interference shall be made to Contractor in accordance with Article 9.0."

(ECF No. 2-1 at 39)(emphasis added).[2]

**Scope of the "No Damages for Delay" clause:**

URS argues that the "No Damages for Delay" clause precludes Norair's ability to recover any damages based on any delays caused by URS or the site owner. Norair argues in opposition that, as an exculpatory clause, Section 8.0 should be construed narrowly and, therefore, that the clause "only bars damages for delays caused by 'other work' occurring concurrently on the project site." (ECF No. 14-1 at 5.) Thus, the "No Damages for Delay" clause is distinguishable from that in *Greiner*, which relieved defendant from delay-based

---

[2] This clause will be referred to herein as the "No Damages for Delay Clause" or "Section 8.0."

liability "from any cause whatsoever," *Greiner*, 83 Md. App. at 625, 577 A.2d at 365, and not solely because of "other work."   In its Reply Brief, URS argues that because Norair's Complaint attributes the delays to URS, "[i]t defies logic that these delays would not fall within the scope of the statement 'Subcontractor's performance of the Work is delayed or interfered with by the work of Contractor.'"  (ECF No. 17 at 6-7.)

Section 8.0 of the Subcontract is entitled "Other Work."  (ECF No. 2-1 at 39.)  This section contemplates work being performed by more than one party "at the Facility Site," and requires coordination and cooperation among the parties "to enable both [the Subcontractor's] work and such other work to be completed without hindrance or interference."  (*Id.*)  The clause pragmatically requires the parties to recognize that not all parties can be in the same place—"the Facility Site"—at once.  (*Id.*)

While this section of the Subcontract thus gives URS immunity from liability for delays caused by the manner in which it schedules and coordinates the various subcontractors' access to—and ability to work on—the site, this immunity is premised on "Other Work" being performed "in or about the Facility Site."  (ECF No. 2-1 at 39.)  To the extent that Norair has alleged damages caused by delays which are not attributable to "Other Work" being performed "in or about the Facility Site," Norair's claims are not barred by the "No Damages for Delay Clause."[3]   Accordingly, Norair has stated a plausible claim for breach of contract, and URS's Motion is DENIED as to Count I.[4]

---

[3] Norair has alleged, *inter alia*, delays based on URS's purported failure to communicate certain revisions to design plans.  (ECF No. 2 at ¶¶ 45-67.)  To the extent that this alleged miscommunication and, possibly, other acts, resulted in delays (and, in turn, damages), Section 8.0 does not appear to bar Norair's recovery.

[4] In light of this result, the Court need not address Norair's other arguments.

### B.  Norair's Quasi-Contract / Unjust Enrichment Claim

URS also seeks dismissal of Norair's unjust enrichment claim (Count III).   URS argues that this cause of action is barred by the existence of an express contract between the parties.  (ECF No. 8-1 at 8-9.)   URS relies on the well-established rule that "no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests," *Chevron*, 113 F. Supp. 3d at 822.

While Norair "agrees with the general principle cited by URS," Norair asserts that exceptions to the general rule apply in this case.  (ECF No. 14-1 at 8-9.)   Those exceptions, Norair argues, apply when: "(1) the express contract does not fully address a subject matter; (2) the parties disagree as to their respective contractual liability; [and] (3) when the terms of a contract or parties to said contract are disputed."  (*Id.* at 9) (internal citations omitted).

Norair's reliance on these purported exceptions to the general rule is misplaced.  As a threshold matter, Maryland courts "rarely depart from th[e] long-standing rule," that quasi-contract claims are barred by the existence of an express contract. *Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560, 567 (2008).   Furthermore, the exceptions which Norair invokes pertain to situations where the very existence and/or scope of the contract are in dispute— not, as here, where "there is no dispute as to whether [Norair and URS] were parties to a valid, enforceable contract," and Norair "has made no allegations of bad faith or fraud in the contract's formation." *Chevron*, 113 F. Supp. 3d at 822. *See also Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014) ("Where a contract exists between the parties covering the same subject matter as the unjust enrichment claim, however, a plaintiff's claim for unjust enrichment *must* include an allegation of fraud or bad faith in the formation of the

contract.").  Thus, the exceptions which Norair invokes do not save its claim for unjust enrichment, and URS's Motion is GRANTED as to Count III.

CONCLUSION

For the reasons stated above, Norair's Motion to Remand (ECF No. 15) is DENIED, and URS's Motion to Dismiss for Failure to State a Claim (ECF No. 8) is GRANTED IN PART and DENIED IN PART; specifically, it is GRANTED as to the unjust enrichment claim (Count III) and DENIED as to the breach of contract claims (Counts I and II).

A separate Order follows.

Dated: December 14, 2016                 ____/s/_____
                                         Richard D. Bennett
                                         United States District Judge